UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

JENNIFER MYERS,
MOISES RIVERA,
Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

      v.                                 Case No. 15-C-0002

AMERICOLLECT INC.,
COLLECTION ASSOCIATES LTD.,

      Defendants,

and

ALLISON HALVORSEN,
KIMBERLY AKER,
Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

      v.                                 Case No. 15-C-0613

COLLECTION ASSOCIATES, LTD.,

      Defendant.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING CASE

On November 19, 2015, the parties filed cross motions for summary judgment on whether the defendants' practice of collecting five percent statutory interest in the absence of a judgement violates the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA"). Wisconsin statute, § 138.04 permits a rate of interest "upon the loan or forbearance of any money, goods or things in action" of 5%; however,

the parties disagree as to whether the statute requires a judicial assessment. For the reasons set forth below, defendants' motion will be granted and this case dismissed.

FINDINGS OF FACT

Plaintiffs, Jennifer Myers, Moises Rivera, Allison Halvorsen, and Kimberly Aker are individuals residing in the Eastern District of Wisconsin (Kenosha County). Defendant Americollect, Inc. ("Americollect") is a corporation with its principal place of business located at 1851 S. Alverno Rd., Manitowoc, WI 54220, and defendant Collection Associates, Ltd. ("CAL") is a corporation with its principal place of business located at 225 S. Executive Dr., Suite 250, Brookfield, WI 53005. With respect to the alleged debts at issue in this action, Americollect and CAL are a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3). Indeed, defendants sought to collect from each plaintiff's debt allegedly incurred for personal, family, or household purposes, specifically one or more medical bills owed or allegedly owed to third party providers of medical services.

The parties do not dispute that each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), and the WCA, Wis. Stat. § 421.301(7). Similarly, they do not dispute that each of the unpaid debts at issue is a "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5) or that each of the unpaid debts at issue in this case arose out of a "consumer transaction" as defined in the WCA, Wis. Stat. § 421.301(10), (13). Finally, the parties do not dispute that each of the medical debts at issue were consumer transactions where payment was "deferred by agreement." *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a

merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'")

Jennifer Myers received dental services from Brian J. Blocher, D.D.S. ("Dr. Blocher") on or about March 28, 2013. Dr. Blocher billed Myers $1,004.00 for the services she received, and Myers did not pay for the those services. On or about January 3, 2014, Americollect mailed a debt collection letter to Myers regarding several alleged debts owed to Dr. Blocher and incurred on March 28, 2013. Blythin Declaration, Ex. A , is the first letter that Myers received from Americollect regarding the alleged debt referenced in the letter. That document contains the following itemization of charges:

| CREDITOR NAME | ACCOUNT # | PRINCIPAL | INTEREST | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|---|---|
| Brian J. Blocher DDS | XXXXXT000 | $1,004.00 | $0.00 | 3/28/2013 | $1,004.73 |
| | | | | AMOUNT DUE | $1,004.73 |

The letter also states that: "Future interest of 5% per year may be added to the account if the amount due is not paid."

On or about November 3, 2014, Americollect mailed a debt collection letter to Myers regarding the same alleged debt owed to Dr. Blocher. Blythin Declaration, Ex. B, contains the following itemization of charges:

| CREDITOR NAME | ACCOUNT # | DATE | BALANCE |
|---|---|---|---|
| Brian J. Blocher DDS | xxxxxT000 | 3/28/2013 | $1,046.16 |
| | | TOTAL: | $1,046.13 |

The itemized account on Blythin Declaration, Ex. A, is the same account as listed on Blythin Declaration, Ex. B. With respect to each of the accounts listed in Blythin

Declaration Exs. A-B, Americollect is, on an ongoing basis, adding 5% interest to the individual account. The balances of Myers' alleged account has increased over time; however, the debt has not been reduced to judgment. The parties are presently unaware of any evidence that Myers agreed to pay any amount of interest, or any rate of interest, on any alleged debts owed to Dr. Blocher or any successor in interest.

Similarly, Moises Rivera received medical services from the Orthopaedic Hospital of Wisconsin ("OHW") on or about February 20, 2012, August 3, 2012, and July 23, 2013. OHW billed Rivera $185.43 for the services he received on or about February 20, 2012, $114.60 for the services he received on or about August 3, 2012, and $799.00 for the services he received on or about July 23, 2013. Rivera did not pay OHW for any of the services he received on these dates.

On or about September 3, 2013, Americollect mailed a debt collection letter to Rivera regarding the alleged debts owed to OHW and incurred on or about February 20, 2012 and August 3, 2012. Blythin Declaration, Ex. C, contains the following itemization of charges:

| Creditor Name | Account Number | Date | Balance |
| --- | --- | --- | --- |
| **Orthopaedic Hospital of Wisconsin** | xxxxx301A | 2/20/2012 | $185.43 |
| **Orthopaedic Hospital of Wisconsin** | xxxxx949A | 8/3/2012 | $114.60 |
| | | TOTAL | $300.03 |

On or about January 9, 2014 Americollect mailed another debt collection letter to Rivera regarding the alleged debt owed to OHW and incurred on or about July 23, 2013. Blythin Declaration, Ex. D, contains the following itemization of charges:

4

| Creditor Name | Account # | Principal | Interest | Last Activity Date | Balance |
|---|---|---|---|---|---|
| Orthopaedic Hospital of Wisconsin | xxxxx6708 | $799.00 | $0.11 | 07/23/2013 | $800.05 |
| | | | | Amount Due: | $800.05 |

Blythin Declaration, Ex. D, states: "Future interest of 5% per year may be added to the account if the amount due is not paid."

On or about January 11, 2014, Americollect mailed a debt collection letter to Rivera regarding the alleged debts owed to OHW and incurred on or about February 20, 2012, August 3, 2012, and July 23, 2013. Blythin Declaration, Ex. E, contains the following itemization of charges:

| Creditor Name | Account Number | Date | Balance |
|---|---|---|---|
| Orthopaedic Hospital of Wisconsin | xxxxx310A | 2/20/2012 | $188.57 |
| Orthopaedic Hospital of Wisconsin | xxxxx949A | 08/03/2012 | $116.58 |
| Orthopaedic Hospital of Wisconsin | xxxxx6708 | 07/23/2013 | $800.27 |
| | | TOTAL: | $1,105.42 |

The itemized accounts in Ex. E are the same accounts as listed on Exs. C and D. Americollect is, on an ongoing basis, adding 5% interest to all of the individual accounts listed in Exs. C-E. Moreover, Ex. D explicitly states that Americollect has added interest to one of the accounts. The balances of all of Rivera's alleged accounts have increased over time due to the addition of interest; however, none of the alleged debts had been reduced to judgment until after Americollect sent Exs. C-E to Rivera. The parties are

5

unaware of any evidence that Rivera ever agreed to pay any amount of interest, or any rate of interest, on any alleged debts owed to the creditor.

Next, Allison Halvorsen received medical services from Milwaukee Anesthesia Consultants, S.C. ("MAC") on or about May 14, 2014. MAC billed Halvorsen $95.69 for the services she received on or about May 14, 2014, but Halvorsen did not pay MAC for the services she received. On or about October 2, 2014, CAL mailed a debt collection letter to Halvorsen regarding the alleged debt owed to MAC and incurred on or about May 14, 2014. Blythin Declaration, Ex. F, contains the following itemization of charges:

> **Account of: Milwaukee Anesth. Consultants S.C.**
> **Last Activity: 05/14/2014**
> **Account Number: XXXXXX440**
> **Balance: $95.69**

The letter contains the following statement: "The amount due stated above is the amount due as of the date of this letter. Future interest of 5% per year may be assessed as permitted by Wisconsin Statutes Section 138.04 if the amount due is not paid." However, the alleged debt has not been reduced to judgment. The parties are unaware of any evidence that Halvorsen agreed to pay any amount of interest, or any rate of interest, on the alleged debts owed to MAC or any successor in interest.

Kimberly Aker received medical services from Midwest Physicians Anesthesiology Services, S.C. ("MPAS"). MPAS billed Aker $1,496.36 for the services she received, but Aker did not pay for those services. On or about October 13, 2014, CAL mailed a debt collection letter to Aker regarding the alleged debt owed to MPAS. Exhibit G contains the following itemization of charges:

> **Balance: $1496.36**
> **Acct#: XXXXXX851**
> **Account of: Midwest Phys. Anes. Services, S.C.**

6

On or about December 19, 2014, CAL mailed another debt collection letter to Plaintiff Aker regarding the alleged debt owed to MPAS. Blythin decl. Exhibit H. Blythin decl. Exhibit H contains the following itemization of charges:

> **Creditor Name: Midwest Phys. Anes. Services, S.C.**
> **Account Number: XXXXXX851**
> **Balance: $1510.01**
> **TOTAL: $1510.01**

The itemized account on Ex. H is the same account as listed on Ex. G. CALs, on an ongoing basis, adding 5% interest to the "Midwest Phys. Anes. Services, S.C." account, and the balance increased from $1,496.36 in October 2014 to $1,510.01 in December 2014 due to CAL's addition of interest. The alleged debts were not reduced to judgment until after CAL sent Exs. G-H to Aker. The parties are unaware of any evidence that Aker ever agreed to pay interest, or any rate of interest, on any alleged debt owed to the creditor.

At all times relevant, Americollect and CAL had agreements with creditors to collect unpaid debts—including statutory interest—on their behalf. (Larsen Decl. Exs. 1-4.) Americollect entered into an Agency Agreement with Dr. Blocher in September 2011. (Larsen Decl. Ex. 1.) Among other things, the agreement stated that Dr. Blocher "instructs [Americollect] to add 5% per annum (where allowed by statute) to all accounts listed with [Americollect] from this date forward." (Larsen Decl. Ex. 1.)

Americollect entered into an Agency Agreement with OHW in May 2002. (Larsen Decl. Ex. 2.) The agreement between Americollect and OHW instructed Americollect "to add 5% prejudgment interest to each account listed with [Americollect] from the date of the listing." (Larsen Decl. Ex. 2.)

CAL entered into an Agency Agreement with MAC on January 1, 2012. (Larsen Decl. Ex. 3.) CAL's agreement with MAC stated that "Agent is instructed to assess a 5%

7

per year charge as permitted by Section 138.04, Wisconsin Statutes, on undisputed accounts listed by Principal." (Larsen Decl. Ex. 3.) CAL entered into an Agency Agreement with MPAS on January 1, 2012. (Larsen Decl. Ex. 4.) CAL's agreement with MPAS stated that "Agent is instructed to assess a 5% per year charge as permitted by Section 138.04, Wisconsin Statutes, on undisputed accounts listed by Principal." (Larsen Decl. Ex. 4.)

On September 5, 2012, the Wisconsin Collectors Association ("Collectors Association") submitted a written request to the Secretary of the Wisconsin Department of Financial Institutions ("DFI Secretary") for a letter ruling. (Larsen Decl. Ex. 5.) The specific question presented for review by the Collectors Association was as follows:

> Whether the practice of collecting 5% statutory interest on liquidated sums (such as unpaid healthcare bills) pursuant to Wis. Stat. § 138.04 and DFI-Bkg. 74.11(1) is in compliance with Wis. Stat. § 427.104(j) (and, relatedly, Wis. Admin. Code § DFI-Bkg. 74.16(9) and (11)) where the amount of the debt has not been reduced to a judgment but where all other documentation, record keeping and reporting requirements of DFI-Bkg. Chapter 74 are satisfied.

(Larsen Decl. Ex. 5.) The Collectors Association's letter request also quoted Wis. Stat. § 138.04. (Larsen Decl. Ex. 5.) The letter further highlighted and discussed the then-current Wisconsin case law regarding the availability of prejudgment interest as a matter of law. (Larsen Decl. Ex. 5.)

The DFI Secretary sent a follow up inquiry to the letter request on October 25, 2012, seeking confirmation from the Collectors Association that the debt at issue "is a medical or healthcare bill for which there is no agreement to defer payment." (Larsen Decl. Ex. 5.) The Collectors Association replied to the DFI Secretary's inquiry on November 5, 2012. (Larsen Decl. Ex. 5.) In doing so, the Collectors Association confirmed that the debt

8

referred to in the letter request "is a fixed, liquidated amount (usually medical debt) which is readily determinable from the invoices" and emphasized that is question "assumes that there is an 'agreement to defer payment' and that Wis. Stat. Sec. 427.104(1) applies." (Larsen Decl. Ex. 5.) Despite the Collectors Association's prompt reply to the follow up inquiry, the DFI Secretary made no other response to the September 5, 2012, letter request. (Larsen Decl. Ex. 5.) To date, the DFI Secretary has never issued a substantive response to the request or otherwise notified the Collectors Association that the collection of statutory interest on liquidated amounts in the absence of a judgment is somehow improper. (Larsen Decl. Ex. 6.)

This litigation started as separate class actions. On January 2, 2015, Myers, Rivera, and other plaintiffs—who have settled—filed a complaint against Americollect in the matter of *Aker, et al. v. Americollect*, E.D. Wis. Case No. 15-CV-2, alleging that any attempt to add or threaten to add five percent statutory interest to unpaid debts before the entry of a judgment violates the FDCPA and the WCA. Halvorsen and Aker filed a nearly identical complaint against CAL in the matter of *Halvorsen, et al. v. Collection Associates*, Ltd., E.D. Wis. Case No. 15-CV-613 on May 21, 2015. Because the separate lawsuits involved similar facts and legal theories, and to avoid duplicative litigation, the court entered an order consolidating the cases on August 24, 2015. The amounts sought by the defendants by means of Blythin Decl., Exs. A-H were consistent with the amounts billed by the original creditors, except for any interest that defendants added prior to mailing the exhibits to plaintiffs. Plaintiffs do not dispute the amounts of the alleged medical debts, except for interest defendants added prior to entry of judgment.

9

For purposes of summary judgment, defendants are not asserting the bona fide error defense under the FDCPA or WCA. 15 U.S.C. § 1692k(c); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 604-05 (2010) (mistakes of law do not qualify for the FDCPA's bona fide error defense); *First Wisconsin Nat'l Bank v. Nicolau*, 113 Wis. 2d 524, 534-35, 335 N.W.2d 390 (1983) (bona fide error defense limited to "violations caused by unintentional acts such as inadvertent clerical errors;" errors of law do not qualify.)

CONCLUSIONS OF LAW

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Advisory Committee's Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).

As an initial matter, defendants argue that the Wisconsin Department of Financial Institutions ("DFI"), the agency responsible for regulating the activities of Wisconsin-licensed debt collectors, has determined that the practice of collecting five percent statutory interest in the absence of a judgment does not violate the WCA, or by extension, the FDCPA. According to defendants, the DFI should be given great deference in this matter. *See Riano v. Shinseki,* 2015 WL 1311445, at *7 (E.D. Wis. March 24, 2015).

10

Wisconsin collection agencies, such as Americollect and CAL, are licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, and regulated pursuant to Chapter 74 of the Wisconsin Administrative Code. Chapter 74 prohibits certain oppressive and deceptive practices, including engaging "in other conduct which can reasonably be expected to threaten or harass the debtor or a person related to the debtor including conduct which violated the Federal Fair Debt Collection Practices Act," and claiming or attempting "to threaten to enforce a right with knowledge or reason to know that the right does not exist." Wis. Admin. Code § DFI-BKG 74.16(9), (11).

Meanwhile, the WCA, Chapters 421 through 427, governs various consumer credit transactions and relationships. The purpose of the WCA is "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants" and to "permit and encourage the development of fair and economically sound consumer practices in consumer transactions." Wis. Stat. § 421.102(2). Chapter 427 is the state court analogue to the FDCPA, applying to the "collection of obligations arising from consumer transactions." Wis. Stat. § 427.102.

Notably, the Wisconsin Statutes provide a mechanism for collection agencies to obtain guidance from the DFI as to their duties under the WCA:

> (ab)1. Upon the request of any person, the administrator shall review any act, practice, procedure or form that has been submitted to the administrator in writing to determine whether the act, practice, procedure or form is consistent with chs. 421 to 427 and 429.
>
> (b) Any act, practice or procedure which has been submitted to the administrator in writing and either approved in writing by the administrator or not disapproved by the administrator within 60 days after its submission to the administrator shall not be deemed to be a violation of chs. 421 to 427 and 429 or any other statute to which chs. 421 to 427 and 429 refer notwithstanding that the approval of the administrator or nondisapproval by

11

> the administrator may be subsequently amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

Wis. Stat. § 426.104(4)(ab) and (b).

Utilizing this process, on September 5, 2012, the Wisconsin Collectors Association submitted a written request to the DFI with the following question for review:

> Whether the practice of collecting 5% statutory interest on liquidated sums (such as unpaid healthcare bills) pursuant to Wis. Stat. § 138.04 and DFI-Bkg. 74.11 is in compliance with Wis. Stat. § 424.104(j) and relatedly, Wis. Admin. Code § DFA-Bkg. 74.16(9) and (11)) where the amount of the debt has not been reduced to a judgment but where all other documentation, record keeping and reporting requirements of DFI-Bkg. Chapter 74 are satisfied.

The DFI Secretary, by letter dated October 25, 2012, sought confirmation from the Collectors Association that the debt at issue "is a medical or healthcare bill for which there is no agreement to defer payment." The Collectors Association responded on November 5, 2012, stating that the debt "is a fixed, liquidated amount (usually medical debt) which is readily determinable from the invoices" and emphasized that its question "assumes that there is an "agreement to defer payment" and that Wis. Stat. § 427.104(1) applies.. Nevertheless, the DFI Secretary allowed the 60-day period for a response to expire without disapproving the practice. And, to date, the DFI has never provided a response or otherwise advised the Collectors Association that the practice is improper. Regardless of the level of deference afforded to the DFI, the Wisconsin statute states that any practice "not disapproved by the administrator within 60 days after its submission to the administrator shall not be deemed to be a violation of chs. 421 to 427."

12

Aside from the safe harbor mechanism set forth in Wis. Stat. § 426.104(4)(b), the FDCPA allows for the collection of interest permitted by law. Specifically, the FDCPA states as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Here, the collection of five percent statutory interest is permissible under a Wisconsin statute:

> The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in ss. 138.041 to 138.056, 138.09 to 138.14, 218.0101 to 218.0163, or 422.201, in which case such rate shall be clearly expressed in writing.

Indeed, Wisconsin law holds that even in the absence of a contractual term that allows for interest to be paid on an overdue account, a creditor whose damages are either liquidated or measurable against a reasonably certain standard is entitled to pre-judgment interest. *Loehrke v. Wanta Builders, Inc.*, 151 Wis. 2d 695, 706 (Ct. App. 1989)(citing *Weyenberg Shoe Mfg. Co. v. Seidl,* 140 Wis.2d 373, 389, 410 N.W.2d 604, 611 (Ct. App. 1987)).

Two Wisconsin district courts have ruled that the 5% statutory interest may be applied to medical debts in the absence of a judgment without violating the FDCPA or WCA. *Trease v. Tri-State Adjustments, Inc.*, 934 F. Supp. 2d 1016, 1018-19 (E.D. Wis. 2013); *Sgrignoli v. Paskin & Oberwetter Law Offices, Ltd.,* 1997 WL 34852146, ** 4-5 (W.D. Wis. 1997). *Trease* involved three letters relating to debts that the plaintiff owed Aurora Health

13

Care. Plaintiff's agreement with Aurora did not call for payment of interest, and the debts had not been reduced to judgment. Moreover, the plaintiff denied owing the debts, but did not dispute their amounts. Judge Lynn Adelman dismissed the plaintiff's claims because "Wisconsin cases make clear that where, as here, the amount of a debt is undisputed, preverdict interest is available as a matter of law." 934 F. Supp. 2d at 1018. "Because plaintiff's alleged debts arose out of a contract for medical services, § 138.04 provides the 316 f3d applicable rate of interest." *Id.,* 934 F. Supp. 2d at 1020.

In ruling on *Trease*, Judge Adelman cited *Sgrignoli v. Paskin & Oberwetter Law Offices, Ltd.*, 1997 WL 34852146 (W.D. Wis. 1997), "a case virtually identical to the facts" of *Trease*, in which a district court in the Western District of Wisconsin held that a debt collector could seek preverdict interest. There, the defendant sent a letter demanding payment of plaintiffs' Physician Plus account with prejudgment interest pursuant to Wis. Stat. § 138.04. 1997 WL 38452146, at *1. Because the Physician Plus $78 debt was a "fixed amount readily determinable from the invoices of Physicians Plus, it was a liquidated claim on which Wisconsin law authorizes the collection of prejudgment interest. 1997 WL 38452146, at *5. The court reasoned that prejudgment interest serves two purposes: (1) it acts as a punishment or penalty for the debtor's refusal to pay liquidated damages which are legally due; and (2) it compensates the creditor for the lost time value of the money. 1997 WL 38452146, at *4.

The parties before this court are well versed in the law on this specific issue. In the pending case, plaintiffs' counsel also represented Lisa Trease before Judge Adelman and, after *Trease* was decided, he moved to withdraw "medical interest" claims with prejudice in a second case before Judge Adelman, *Morgan v. Collection Associates*, Case No. 12-C-

14

1255. At the same time, plaintiffs' counsel represented John and Elizabeth Paige before this court in Case No. 12-C-601.

In *John and Elizabeth Paige v. Waukesha Health System, Inc., d/b/a Professional Receivables Management*, Case No. 12-601, the defendants moved to dismiss, among other things, four counts based on the assessment of prejdugment interest at the rate of 5% per year on the outstanding balance of a debt owed Waukesha Health. The court denied the motion to dismiss one from the bench one day before *Trease* was decided. In ruling, the court noted that prejudgment interest applies to a fixed and determinate amount which could have been tendered and interest thereby stopped." *Paige*, 2013 WL 3560944 at *6 (citing *De Toro v. DI–LA–CH, Inc.*, 31 Wis.2d 29, 34, 142 N.W.2d 192, 195 (1966). "For example, when work is performed under a contract and the fee for services is not disputed, prejudgment interest is allowed." *Id.* (citing *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶ 48, 265 Wis.2d 703, ¶ 48, 666 N.W.2d 38, ¶ 48. The court denied the motion to dismiss for the following reason:

> Here, not enough is known about the basis for interest. Thus, dismissal at the Rule 12 stage would be improper. First, the court has nothing on which to find that an award of interest was permitted pursuant to a contract of the parties versus under the common law. Second, the court has no basis on which to find that the dollar amounts set forth in the letters attached to the complaint stemmed from liquidated debts.

2013 WL 3560944 at *8. Indeed, the plaintiff's complaint referred to an "alleged debt" rather an undisputed or liquidated debt. Further, the parties in *Paige* did not disclose the filing with the DFI or cite to *Sgrignoli*, presumably because *Sgrignoli* was not reported in the Federal Supplement. In any event, the decision was proper on a Rule 12 motion, and, ultimately, the parties resolved their dispute prior to any briefing on summary judgment.

15

Plaintiffs also cite *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003), where a debt collection letter incorrectly stated the amount of a debt in violation of the FDCPA when it set forth an amount that included treble damages that had not yet been awarded by a court. *Id.*, 316 F.3d at 692. According to the Seventh Circuit, the FDCPA's "amount of the debt" provision "is designed to inform the debtor . . . of what the obligation is, not what the final, worst-case scenario could be." *Id.*, 316 F.3d at 693. Because the debtor could not be held for treble damages, court costs or fees until there was a judgment, they could not be part of the "remaining principal balance" of the claimed debt. *Id.* At the same time, the Seventh Circuit recognized that the definition of "debt" under the FDCPA means an "obligation or alleged obligation . . . whether or not such obligation has been reduced to judgment." *Id.* at 693 (quoting 15 U.S.C. § 1692a(5)). As such, *Veach* does not control the outcome of this case.

Based on implicit approval of the practice at issue by the DFI, the Wisconsin statute authorizing the 5% award of prejudgment interest, case law approving the practice and the fact that the debts in this case are undisputed, liquidated debts, the defendants are entitled to an order granting their motion. This ruling is consistent with the equitable policy that allows a creditor to be compensated for the time value of the money that would have been received if the payment had been made when due. *Chicago Title Ins. Co. v. Runkel Abstract & Title Co.*, 654 F. Supp. 2d 926, 928 (W.D. Wis. 2009). Now, therefore,

IT IS ORDERED that defendants' motion for summary judgment (Doc. 22) is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Doc. 26) is denied.

IT IS FURTHER ORDERED that Case Nos. 15-C-0002 and 15-0613 are dismissed with prejudice.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE